# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

PAUL A. SEKULICH, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-12-265-FHS-SPS
 )
CAROLYN W. COLVIN, )
**Acting Commissioner of the Social** )
**Security Administration,**[1] )
 )
        **Defendant.** )

## REPORT AND RECOMMENDATION

The claimant Paul A. Sekulich requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 6, 1985, and was twenty-six years old at the time of the administrative hearing (Tr. 33). He earned his GED and has no past relevant work experience (Tr. 27). The claimant alleges inability to work since September 15, 2008 due to back and knee pain and post-traumatic stress disorder (Tr. 171).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 31, 2010 (Tr. 18). His applications were denied. ALJ Lantz McClain conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated December 16, 2011 (Tr. 18-29). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of appeal. *See* 20 C.F.R. §§ 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c); 416.967(c), but was limited to simple, repetitive tasks and only incidental contact with the public (Tr. 22). The ALJ concluded that while the claimant had no past relevant work to which he could return, he was nevertheless not disabled because there was work he could perform, *i. e.*, laundry worker and dishwasher (Tr. 28).

## Review

The claimant contends that the ALJ failed to fulfill his duty to fully develop the record in this case, *i. e.*, that he should have ordered a more comprehensive consultative examination of his mental impairments. The undersigned Magistrate Judge finds that the decision of the Commissioner should be reversed and the case remanded for failure to properly analyze medical evidence that does appear of record, and will therefore leave to the ALJ to determine on remand whether any additional consultative examination should be ordered.

The claimant began receiving outpatient treatment with CREOKS Mental Health in December 2010 (Tr. 215). At that time, he was diagnosed with depressive disorder, NOS, and his GAF was assessed to be a 48 (Tr. 217). The claimant reported that he was very depressed and having problems with anxiety (Tr. 218). At intake, the claimant also reported that he "hears voices on an almost daily basis" and "sees shadowy figures

frequently" (Tr. 221). As a result of his problems, the claimant was prescribed Celexa and Lamictal (Tr. 237).

The claimant was evaluated by state examining physician Dr. Brian R. Snider, Ph.D. on January 18, 2011 (Tr. 239). Noting that the claimant was a poor historian, Dr. Snider wrote that the claimant had received both inpatient and outpatient treatment for his mental health problems (Tr. 239). The claimant also related that he had experienced several traumatic events, including being molested by a babysitter and getting hit in the head with a machete (Tr. 240). The claimant reported that he had "quit all of his jobs because he did not like being around other people" (Tr. 240). After conducting his examination, Dr. Snider found the claimant's "ability to understand, remember, and carry out complex instructions appear[ed] to be mildly impaired, and the claimant would have "moderate to marked difficulty concentrating and persisting through a normal work day as a result of psychiatric symptoms" (Tr. 241-42). Finally, Dr. Snider wrote that the claimant would "experience a moderate to marked disruption in a normal work schedule due to . . . psychiatric symptoms" and would "have mild to moderate difficulty interacting with coworkers and supervisors appropriately" (Tr. 242).

State reviewing physician Dr. Dorothy Millican-Wynn, Ph.D., completed a Psychiatric Review Technique on February 8, 2011 (Tr. 247). Dr. Millican-Wynn opined that the claimant exhibited depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking (Tr. 250). Additionally,

Dr. Millican-Wynn thought that claimant also exhibited anxiety evidenced by recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress (Tr. 252). As a result, Dr. Millican-Wynn opined that the claimant had mild limitations in his activities of daily living and moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 257). Dr. Millican-Wynn also completed a Mental Residual Functional Capacity Assessment, in which she found that the claimant was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 243-44). In her written findings, Dr. Millican-Wynn wrote that the claimant could perform simple and some complex tasks with normal supervision, relate to coworkers and supervisors on a superficial basis, tolerate contact with the general public, and adapt to changes in the work place (Tr. 245).

On March 31, 2011, state reviewing physician Dr. Sharon Taber, Ph.D. also completed a Psychiatric Review Technique in which she found that the claimant exhibited depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, and hallucinations, delusions or paranoid thinking (Tr. 269). Dr. Taber, too, found that the claimant also demonstrated anxiety evidenced by recurrent and intrusive recollections of a traumatic experience (Tr. 271). As a result of these findings, Dr. Taber opined that the claimant had moderate limitations in activities of daily living, maintaining social

functioning, and maintaining concentration, persistence, or pace (Tr. 276).  Like Dr. Millican-Wynn, Dr. Taber also completed a Mental Residual Functional Capacity Assessment, in which she found that the claimant is markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 262-63).

Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. In evaluating opinions from state agency physicians and psychologists, the ALJ is required to analyze them in accordance with the factors set out in 20 C.F.R. 404.1527(c)(1)-(6); 416.927(c)(1)-(6). Those factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. 404.1527(c)(1)-(6); 416.927(c)(1)-(6). Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id*. *See also Valdez v.*

*Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). In general, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(1), (2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2.

In this case, the ALJ stated he was assigning considerable weight to Dr. Tabor's opinion and little weight to Dr. Snider's opinion. In rejecting Dr. Snider's opinion, the ALJ stated that Dr. Snider was inconsistent in noting the claimant's "mild impairment in memory and concentration" but opining he would "have moderate to marked difficulty concentrating" (Tr. 27). But Dr. Snider's initial observation pertained to the claimant's presentation *during the mental status examination* (Tr. 241), while his opinion pertained to the moderate to marked memory and concentration difficulties the claimant would have *during a normal work day* stemming from his psychiatric symptoms (Tr. 242). Dr. Snider further opined that the claimant's psychiatric symptoms would cause "a moderate to marked disruption in a normal work schedule" (Tr. 242). Thus, the ALJ's reason for assigning little weight to Dr. Snider's opinion is not supported by the record. *See, e. g., Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) (noting that the ALJ did not adequately explain why the opinion of a non-examining physician deserved greater

weight than the opinion of an examining physician) [unpublished opinion]. In any event, the ALJ wholly failed to analyze Dr. Snider's opinion by applying the factors set out in 20 C.F.R. 404.1527(c)(1)-(6); 416.927(c)(1)-(6).

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of Dr. Snider's opinions. On remand, the ALJ should reconsider Dr. Snider's opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma